[Cite as *Stahl v. Allen-Clay Joint Fire Dist.*, 2021-Ohio-986.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

Mark W. Stahl

Appellant

v.

Allen-Clay Joint Fire District

Appellee

Court of Appeals No. OT-20-015

Trial Court No. 19-CV-352

**DECISION AND JUDGMENT**

Decided:  March 26, 2021

* * * * *

John A. Coppeler, for appellant.

Mark S. Finamore and Stephen A. Turner, for appellee.

* * * * *

**MAYLE, J.**

{¶ 1} Appellant, Mark W. Stahl, appeals the June 1, 2020 judgment of the Ottawa County Court of Common Pleas, affirming the decision of the Board of Trustees of the Allen-Clay Joint Fire District, which found him guilty of misconduct in office.  For the following reasons, we affirm.

# I. Background

{¶ 2} On August 9, 2018, the Allen-Clay Joint Fire District was dispatched to a home in Williston, Ohio, where an elderly man was reportedly unresponsive and not breathing. Appellant, Battalion Chief Mark W. Stahl, responded to the call along with one paramedic and six emergency medical technicians ("EMTs"). They arrived to find the patient slouched in his recliner. His pulse was weak and he did not respond to sternal rubbing. The responders soon observed agonal breathing, then the patient stopped breathing entirely. He was in cardiac arrest.

{¶ 3} The patient was moved to the floor and the team began resuscitative efforts. Paramedic C.O. situated herself at the head of the patient so that she could intubate him. Stahl situated himself at the patient's left arm to start an IV. Other technicians performed chest compressions and bag-valve mask ventilation.

{¶ 4} C.O. was experiencing difficulty intubating the patient and Stahl was having problems placing the IV. Because the IV had not been placed, it was quickly recognized that an intraosseous infusion ("IO") would be needed to administer medications to the patient. IO is an invasive procedure that involves drilling through the patient's tibia bone in order to inject fluids and medication into the patient's bone marrow. Of the eight emergency responders who were present, only two of them carried the necessary certification required to perform the procedure—C.O. and Stahl, who was an EMT-intermediate. Notwithstanding this fact, the procedure was performed, successfully, by EMT-basic, J.F. Medications were administered through the IO, and the patient was

2.

placed on a board and transported to the hospital via ambulance. The patient did not survive, but there is no suggestion that his death was attributable to the care rendered by the first responders.

{¶ 5} As is required after emergency medical services are rendered, C.O. prepared a patient care report. The report identifies the treatment provided and the provider who administered the treatment. C.O. listed herself as the provider who performed the IO.

## A. An investigation is initiated.

{¶ 6} It eventually came to the attention of District Captain Matt Toflinski—who was responsible for quality assurance—that J.F. had performed the IO. Captain Toflinski reported this to his superior, District Fire Chief Michael Musolf, and an investigation ensued. David Comstock, Jr., an attorney and fire chief of the Western Reserve Joint Fire District in Mahoning County, was appointed to investigate the matter and provide findings and recommendations.

{¶ 7} Comstock reviewed written statements and conducted oral examinations of the personnel present for the August 9, 2018 run. J.F. reported that Stahl ordered him to perform the IO, so he did. He said that he believed that because he was following the order of a superior who himself possessed the certification required to perform the procedure, this excused his conduct in acting outside the scope of his certification. J.F. also said that after the run, he thanked Stahl for allowing him to perform the procedure; Stahl said nothing in response.

3.

**{¶ 8}** Two other EMTs reported hearing Stahl order J.F. to perform the IO. The paramedic and the remaining EMTs reported either that they did not know who gave the order or that they heard Stahl say "drill him," but did not hear him direct this order to J.F. Stahl denied ordering J.F. to perform the IO and denied even knowing that J.F. had performed the IO; he claimed that he was focused too intently on establishing IV access to notice and did not review the patient care report.

**{¶ 9}** After concluding his investigation, Comstock submitted a written report finding J.F., C.O., and Stahl guilty of misfeasance and misconduct by nonfeasance. With respect to Stahl, he stated:

> Mark Stahl committed misfeasance by ordering a non-certified person
> (anyone else other than C.O.) to perform the IO procedure, knowing that
> only non-certified persons were operating on the call. However, even if
> Chief Stahl was not aware that there were not any certified persons
> available to perform the procedure, Chief Stahl committed non-feasance by
> his failure to administratively address this issue following the termination
> of the incident. Chief Stahl failed to report this incident as required by
> Ohio Administrative Code §4765-9-01(G).

### B. The board finds Stahl guilty of misconduct.

**{¶ 10}** Following Comstock's findings, Stahl requested a hearing before the Board of Trustees of the Allen-Clay Joint Fire District ("the board"), which was conducted on August 29, 2019. After the hearing, the board issued a decision. With respect to the

4.

charge of misfeasance, the board found Stahl not guilty. It concluded that "the evidence does not support a finding Battalion Chief Stahl ordered or knowingly permitted EMT-BASIC [J.F.] to perform and [sic] I/O medical procedure in violation of his EMT Certification Authority and District Protocol."

{¶ 11} The board found Stahl guilty of misconduct in office, however. It found:

> [E]vidence supports a finding that Battalion Chief Mark Stahl is guilty of misconduct in office by reason of nonfeasance, failing to administratively address the issue of EMT-BASIC [J.F.] performing an I/O medical procedure in violation of his EMT-BASIC Certification Authority and District Protocol when Battalion Chief, Mark Stahl knew or should have known of the occurrence of EMT-BASIC [J.F.] performing an I/O medical procedure in violation of his certification authority and district protocol and Battalion Chief Mark Stahl's failure to properly report the violation.

> The fact that Battalion Chief Mark Stahl may not have directly observed the I/O procedure being performed by EMT-BASIC [J.F.] with knowledge of [J.F.'s] Certification Authority and District Protocol as Battalion Chief Mark Stahl alleges, does not relieve him of his duty to report the violation as soon as the same became known to him, which he did not.

5.

{¶ 12} The board imposed sanctions and penalties including (1) a 60-day unpaid suspension; (2) one year of probation subject to Stahl's removal without cause; and (3) attendance at and successful completion of the Maxwell Leadership Educational Course. The board's decision provided for the eventual removal of the disciplinary action from Stahl's personnel file.

### C. The trial court affirms the board's decision.

{¶ 13} Stahl appealed the board's decision to the Huron County Court of Common Pleas. He argued that the decision of the board finding him guilty of misconduct was arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. He maintained that because the board could not conclude that he directed or knowingly permitted J.F. to perform the IO, it also could not properly find that he *knew* that J.F. had performed the IO. He claimed that there was no evidence that Stahl saw J.F. perform the IO, that J.F. discussed the IO insertion with him after the run was over, or that any of the other EMTs present that day (two of whom were captains) ever mentioned it to him.

{¶ 14} Stahl also challenged the board's conclusion that he *should have known* that J.F. performed the IO. He maintained that the scene was chaotic, he was focused on starting an IV, he did not see J.F. perform the IO, and because C.O. at some point left the patient's head and went to his feet, he may well have presumed that C.O. performed the IO. He insisted that there was no evidence that he was supposed to or did consult with the other responders after the call to find out who performed the procedure, and he was

6.

not obligated to review C.O.'s patient care report. Stahl contended that there was no evidence that he became aware of who performed the IO until the fire district initiated its investigation, and while the board may have believed that he should have *suspected* that an unauthorized EMT performed the procedure, he was not required to report a mere suspicion.

{¶ 15} Stahl also challenged the sanction imposed by the board that would permit his removal without cause. He argued that this sanction violated his due process rights.

{¶ 16} The trial court concluded—and the board conceded—that the removal-without-cause sanction was improper. It remanded the matter to the board to modify this term of Stahl's probation. But it affirmed the board's decision finding him guilty of misconduct by reason of nonfeasance.

{¶ 17} The trial court began by explaining that the board's conclusions were premised on what Stahl "knew" at different points in time as reflected by his conduct. It characterized the misfeasance charge as focusing on what Stahl knew *during* the emergency resuscitation efforts, and the misconduct charge as focusing on what Stahl knew *after* the emergency run. It clarified that with respect to the misfeasance charge, the board found not that Stahl did not order or knowingly permit J.F. to perform the procedure, but rather that *the evidence did not establish* that Stahl ordered or knowingly permitted J.F. to perform the IO.

{¶ 18} Turning to the misconduct charge, the court found that it was undisputed that Stahl, as battalion chief, was the officer in charge of all the personnel on the scene,

7.

Stahl knew that only he and C.O. were certified to perform the IO, J.F. performed the IO despite not being certified, and Stahl did not administratively address the issue of J.F. performing the procedure or report the violation to his supervisors. The court observed that the board had found that it was Stahl's responsibility as battalion chief to know who had performed all the procedures on the run. He knew that *he* did not perform the procedure and he did not see C.O. direct the procedure or perform it herself. Stahl, as the supervisor, was therefore obligated to "question in his own mind" who performed the IO and ascertain who performed the procedure. By process of elimination, he should have known that an unauthorized person performed the procedure, and he should have reported this violation to his superior.

{¶ 19} The court emphasized that Stahl's own testimony provided the evidence necessary to support the board's findings: (1) Stahl knew the level of certification of all personnel on the scene; (2) he knew that only he and C.O. were authorized to perform the procedure; (3) he did not know who performed the procedure; (4) his written job description required him to supervise all firefighters and EMTs on the scene of an emergency operation; and (5) he did not review C.O.'s written report or otherwise investigate the issue to determine who performed the IO procedure.

{¶ 20} The court concluded that the board's decision finding Stahl guilty of misconduct was not unconstitutional, illegal, arbitrary, capricious, or unreasonable, and was supported by the preponderance of reliable, probative, and substantial evidence in the record. It affirmed the board's decision.

8.

**{¶ 21}** Stahl appealed. He assigns the following error for our review:

The Common Pleas Court abused its discretion in affirming the decision of appellee's Board of Trustees which found appellant guilty of misconduct in office in failing to report that an EMT-Basic had performed a procedure for which he lacked certification where the Board found that appellant knew or should have known of the occurrence.

## II. Law and Analysis

**{¶ 22}** In his sole assignment of error, Stahl argues that the board's finding that he was guilty of misconduct in office is based entirely on its conclusion that Stahl *should have known* that an IO procedure was performed by somebody who lacked the certification to do it. He maintains that there is no evidence that Stahl owed a duty—either under departmental protocols or under Ohio law—to ascertain who performed what duties at the scene. He insists that even if he owed such a duty, had he reviewed the run report prepared by C.O., it would have indicated that C.O. herself performed the procedure. Thus, he contends, there would have been nothing to report because he had no reason to believe the report was false. Stahl also argues that the court abused its discretion in affirming the board's decision because by the time he became aware that J.F. performed the IO, the matter was already in the hands of his superior.

**{¶ 23}** The board responds that one of Stahl's duties as battalion chief is to supervise firefighters and EMTs on emergency operation scenes. The board also points to Ohio Adm.Code 4765-9-01(G), which requires that "[a] person issued a certificate to

9.

practice shall report to the division as soon as practicable any knowledge of a violation of Chapter 4765. of the Revised Code or Chapters 4765-1 to 4765-10 or 4765-12 to 4765-19 of the Administrative Code." Because J.F. performed an IO without the proper certification, the board maintains that Stahl was required to report J.F.'s conduct, both to his superior and to the organizations that oversee EMTs, including the State Board of Emergency Medical Services and the Northwest Ohio EMS Consortium.

{¶ 24} The board acknowledges that the issue here turns on what Stahl knew. It claims that while conflicting evidence was provided, there was substantial evidence in the record to show that Stahl ordered J.F. to perform the IO. It further contends that C.O. was in front of Stahl, so even if Stahl did not know specifically who performed the procedure, he had to know that it was not performed by the only two people there who were authorized to do so. And it emphasizes that J.F. testified that after the run, he thanked Stahl for allowing him the opportunity to perform the procedure.

{¶ 25} The board echoes the trial court's characterization of its decision: that it did not find that Stahl did not order or permit J.F. to perform the procedure—only that the evidence did not support the finding. The board insists that the finding of guilt as to the misconduct charge did not require a finding of guilt on the misfeasance charge; it only required that Stahl knew or should have known that J.F. performed the IO and that he failed to address it.

{¶ 26} Finally, the board argues that Stahl cannot escape culpability by arguing that C.O. was responsible for generating the patient care report or that two other captains

10.

observed the procedure and did not report it. It maintains that Stahl's responsibility is independent of the captains' responsibilities, and even though the run report falsely showed that C.O. performed the IO, this is of no matter because Stahl never reviewed the report.

{¶ 27} Our review of an appeal of a decision of an administrative agency under R.C. 2506.01 is limited and is much narrower than the standard of review applied by the common pleas court. *Adams Quality Heating & Cooling v. Erie Cty. Health Dept.*, 6th Dist. Erie No. E-12-040, 2014-Ohio-2318, ¶ 10, citing *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000). The common pleas court examines the evidence, including any new or additional evidence admitted under R.C. 2506.03. *Id.* Based on its review of the whole record, it then determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. *Id.*

{¶ 28} By contrast, we review the judgment of the common pleas court only on questions of law. *Id.;* R.C. 2506.04. We will not weigh the evidence and we may not substitute our judgment for that of the administrative agency or the common pleas court, regardless of whether we may have arrived at a different conclusion. *Id.* Our role is limited to reviewing questions of law, employing a de novo standard, and determining whether the trial court abused its discretion in applying the law. *Id.* at ¶ 11, 735 N.E.2d 433. "Abuse of discretion" suggests more than an error of law or judgment; it implies

11.

that the court's attitude is unreasonable, arbitrary or unconscionable. *Id.*, citing *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 29} Here, there is no dispute that J.F. exceeded the scope of his certificate to practice as an EMT- basic, and his conduct was, therefore, improper. The testimony before the board demonstrates that as a battalion chief, Stahl was responsible for supervising the scene, regardless of whether it was a fire or an EMS scene. As the highest ranking officer on the scene, Stahl's superior expected him to report improper activity. Additionally, Ohio Adm.Code 4765-9-01(G) requires a certified EMT to report knowledge of a violation of R.C. Chapter 4765 or Ohio Adm.Code Chapters 4765-1 to 4765-10 or 4765-12 to 4765-19.

{¶ 30} Stahl frames the legal question here as whether he owed a duty under departmental protocols or under Ohio law to ascertain who performed what procedures "when he had not personally witnessed everything that was being done for the patient" and "was not responsible to prepare the run report." But the board found—and the trial court agreed—that the evidence demonstrated that Stahl was aware that J.F. performed the IO, even if he did not direct him to do so. According to various testimony and evidence before the board, the team had worked in very close quarters, the only other person certified to perform the procedure was within Stahl's line of sight trying to intubate the patient, and after the run was completed, J.F. thanked Stahl for allowing him to perform the procedure. The board's decision did not turn on whether Stahl "personally witnessed" J.F. perform the procedure—it turned on whether he knew or should have

12.

known.  Although disputed, there is evidence to support the board's finding that Stahl knew or should have known that J.F. performed the IO, either by process of elimination or because J.F. specifically mentioned it to him.

{¶ 31} Accordingly, we cannot say that the trial court abused its discretion in applying the law when it concluded that the board's decision finding Stahl guilty of misconduct was not unconstitutional, illegal, arbitrary, capricious, or unreasonable, and was supported by the preponderance of reliable, probative, and substantial evidence in the record.

{¶ 32} We find Stahl's sole assignment of error not well-taken.

### III.  Conclusion

{¶ 33} The board had before it evidence that Stahl was obligated to supervise firefighters and EMTs at an emergency scene and that he was required to report improper conduct to his superior and to the State Board of Emergency Medical Services and the Northwest Ohio EMS Consortium.  Although contested, there was reliable, probative, and substantial evidence that Stahl knew or should have known that improper conduct took place at the scene of an emergency, and he failed to report that conduct.  We affirm the June 1, 2020 judgment of the Ottawa County Court of Common Pleas.  Stahl is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.      _____
                 JUDGE

Christine E. Mayle, J.

Gene A. Zmuda, P.J.       _____
CONCUR.              JUDGE

              _____
                 JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.